Maurice Harmon
Harmon & Seidman LLC
11 Chestnut Street
New Hope, PA 18938
Tel: (917) 516-4434
E-mail: maurice@harmonseidman.com

Amanda Bruss
Harmon & Seidman LLC
12354 East Bates Circle
Aurora, CO 80014
Tel: 415-271-5754
E-mail: amanda@harmonseidman.com

*Attorneys for Plaintiff Michael Keller*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL KELLER, | ) |
| Plaintiff, | ) Case No. 2:16-cv-01778-JHS |
| v. | ) PLAINTIFF'S MEMORANDUM OF LAW |
| MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC and MCGRAW-HILL SCHOOL EDUCATION HOLDINGS, LLC | ) IN OPPOSITION TO DEFENDANT'S ) MOTION TO TRANSFER VENUE |
| Defendants. | ) |

## I. INTRODUCTION

Plaintiff Michael Keller asks the Court to deny the motion by Defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC (collectively "MHE") for transfer of this matter to the Southern District of New York.

A determination whether to transfer an action for "the convenience of parties and witnesses, in the interest of justice" under 28 U.S.C. § 1404(a) is committed to this Court's broad discretion. Keller is a professional photographer who lives and conducts his business in Beach

Lake, Pennsylvania. His Complaint alleges that MHE exceeded the scope of limited licenses that were issued to MHE by The Stock Market ("TSM") and Corbis Corporation ("Corbis"), and used his photographs in additional, entirely unlicensed, publications. Keller's suit is not a "dispute regarding" MHE's pricing agreements with Corbis – Keller is suing MHE for copyright infringement. To the extent resolution of his claims requires consideration of any documents, those documents are the TSM and Corbis licenses, which MHE neglected to submit to the Court. Because the forum selection clause upon which MHE relies does not apply to the claims at issue, and because MHE has not met its burden of showing the evidence clearly weighs in favor of transfer, the case should remain in the Eastern District of Pennsylvania.

## I.     BACKGROUND

### A.     The parties.

Keller has created thousands of photographs over the course of his 30+ year career, which he licensed to a wide range of clients – including MHE – through stock photography agencies. MHE is a billion-dollar international distributor of textbooks and a serial infringer of copyrights in photographs.

More than two dozen other photographers and stock photography agencies have brought copyright infringement actions against MHE based on the same practice that Keller alleges here.[1] In a September 2014 mini-trial of 53 claims, a Philadelphia jury concluded that MHE infringed copyright when it used photography beyond the terms of invoices issued by another stock photography agency.[2] Prior to a second trial of the 1,722 remaining claims in the same case, MHE "concede[d] liability for a total of 1,092 claims."[3] And a District Court in Illinois

---

[1] Complaint (Doc. 1) at ¶18.
[2] *Grant Heilman Photography, Inc. v. McGraw-Hill Global Educ. Holdings, LLC*, 2015 WL 1279502 * 3 (E.D. Pa. 2015).
[3] Declaration of Amanda L. Bruss ("Bruss Decl.") ¶3, Ex. A ("Defendants' Memorandum Regarding Liability and

determined on summary judgment that MHE's uses of photographs beyond license restrictions constituted copyright infringement.[4]

In addition, two juries have found that an educational textbook publisher, like MHE, *willfully* infringed copyright when it used stock photographs beyond the terms of limited licenses that were granted to the publisher. In *Psihoyos v. John Wiley & Sons, Inc.*,[5] the Second Circuit upheld a jury's verdict that awarded, among other amounts, $100,000 in statutory damages against a publisher like MHE for willfully "exceeding the print run limitation for one of the Plaintiff's [stock] photos."[6] And in *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*,[7] a jury found that the plaintiff stock photography agency proved that the publisher's infringement of five photographs was willful, and awarded a total of $400,000 in statutory damages.[8]

**B.     The claims asserted in the Complaint.**

The Complaint identifies 144 photographs ("Photographs") Keller alleges MHE infringed, by using the Photographs beyond the parameters of the 209 licenses listed in Exhibit 1,[9] or by including them in entirely unlicensed publications.[10] Seventy-six of the licenses identified in the Complaint were issued before January 1, 2003,[11] the effective date of the first

---

Damages for Remaining Claims" (Doc. 275)), at p. A-007.
[4] *Panoramic Stock Images, Ltd. v. McGraw-Hill Global Educ. Holdings, LLC*, 2014 WL 6685454 (N.D. Ill. 2014), *opinion clarified*, 2015 WL 393381 (N.D. Ill. 2015).
[5] 748 F.3d 120, 126-27 (2d Cir. 2014).
[6] *Psihoyos v. John Wiley & Sons, Inc.*, 2012 WL 5506121 * 1 (S.D.N.Y. 2012) (denying defendant' motion for remittitur), *aff'd*, 748 F.3d at 126-27.
[7] N.D. Ill. Case No. 12-CV-10003 ("*Panoramic Stock Images v. Wiley*").
[8] Bruss Decl., ¶¶4-5, Ex. B (completed verdict form), and Ex. C ("Judgment in a Civil Case"), in *Panoramic Stock Images v. Wiley*, Doc. 180 (awarding a total of $403,500 in damages)).
[9] Doc. 1, ¶15.
[10] Doc. 1, ¶16.
[11] Doc. 1-1.

agreement submitted by MHE.[12]

### C. The forum selection clauses.

Keller's infringement claims for use without any license are, by definition, not tethered to any agreement. Keller's claims for use beyond license terms contend that MHE's use was limited by "Invoice and License Agreements" (hereafter, the "Licenses") issued by TSM and Corbis. MHE's Motion relies upon forum-selection clauses not in the Licenses, but in *pricing* agreements with Corbis – the three "preferred pricing agreements" ("PPAs") attached to the Declaration of Bonnie Beacher.[13] Though MHE's counsel, Christopher Beall, contends that, "all of the[] invoices were issued from [Corbis and TSM]'s offices in New York City, New York, and all contain mandatory forum-selection clauses that specify New York as the venue for any actions arising from such invoices," MHE has neglected to include <u>any</u> of the Licenses themselves, nor has MHE produced them in this case. The Licenses Plaintiff's counsel has access to directly contradict Mr. Beall's statement. For example, License 228168 appears to have been issued by Corbis from its offices in Tacoma, Washington, to MHE's offices in Peoria, Illinois, and does not contain a forum selection clause.[14] License 263436 was issued by Corbis from Bellevue, Washington, to MHE's offices in Peoria, Illinois, and also does not have a forum selection clause.[15]

## II. ARGUMENT

### A. The Court has broad discretion to deny transfer.

MHE's motion calls upon this Court to exercise its *discretion*.[16] Section 1404(a)

---

[12] *See* Beacher Decl., Ex. A (Doc. 8-5).
[13] Docs. 8-5, 8-6, and 8-7.
[14] Bruss Decl., Ex. D, p. 5.
[15] *Id.*, p. 26.
[16] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) ("section 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."), citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S.

provides: "For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[17]  District courts "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"[18]  "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."[19]  Accordingly, "only in rare instances have appellate courts overridden a trial court's discretion not to transfer."[20]

    **B.**    **MHE has failed to demonstrate that any of the claims in suit are covered by a forum selection clause, so the *Atlantic Marine* "adjustments" to the Section 1404(a) transfer analysis do not apply in this case.**

        **1.**    **MHE has not submitted key evidence pertinent to its own motion.**

MHE's reliance on *Atlantic Marine Construction*[21] rests on the false premise that the forum selection clause in the 2003, 2006 and 2009 PPAs with Corbis apply to this dispute.  But the PPAs did not, in and of themselves, grant MHE any right to use any particular Keller image in any particular MHE publication.  Despite the existence of the PPAs, MHE was obligated to obtain and comply with the Licenses, which set forth the limits on MHE's uses.[22]  To the extent interpretation of any contracts bear on the infringement claims here, it is the Corbis and TSM Licenses – not the PPAs – that set the scope of MHE's use.[23]

---

Ct. 2239, 2239, 101 L. Ed. 2d 22 (1988); *Sharma*, 2016 WL 2742399 * 1 ("a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis").
[17] 28 U.S.C. § 1404(a) (emphasis added).
[18] *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 23, 108 S. Ct. 2239, 2239, 101 L. Ed. 2d 22 (1988).
[19] *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).
[20] *Id.*
[21] *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).
[22] *See* Declaration of Daniel Feduff, Corbis' Senior Director of Image Operations, Bruss Decl., Ex. E, at ¶7 ("Corbis's practice has been to require MHE to obtain an *invoice* before MHE could use an image in the manner specified in the *invoice*…. Corbis did not intend that MHE could make unauthorized uses of the content beyond the *invoice* terms.") (emphases added).
[23] *See, e.g. Toner v. Miller,* No. CIV.A. 03-3498, 2003 WL 22358446, at *1 (E.D. Pa. Sept. 8, 2003) (declining to apply a forum selection clause that was included in related contract, but not the primary agreement under which the dispute arose).

MHE contends that, "at all times relevant to the claims in this action, the invoicing issued by TSM and Corbis contained similar mandatory forum-selection clauses that specified New York as the venue for any action arising from such invoices."[24] But MHE did not submit **any** of the Licenses at issue in this case in support of this contention, even though MHE has the burden of proof as moving party.[25] MHE has copies of all of the licenses it received from Corbis and TSM – Mr. Beall stated in his declaration that he reviewed them.[26] But MHE has inexplicably decided not to submit these documents to the Court. Under the best evidence rule, Fed. R. Evid. 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless the [federal] rules or a federal statute provides otherwise." As explained by the Supreme Court, "[t]he elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description."[27] To prove the contents of the Licenses, MHE was obligated to produce those documents.[28] It chose not to do so, and so the Court is left with only the PPA clause to consider.

   2.   **The language of the PPA forum selection clause does not encompass the claims in suit.**

Whether a forum selection clause applies depends on the specific language of the clause

---

[24] Doc. 8-1 at 4.
[25] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, and '* * * unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'") (internal citations omitted); *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011) ("Consequently, the burden rests squarely on the party seeking a transfer 'to establish that a balancing of proper interests weighs in favor of the transfer.' That burden is a heavy one: 'unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiffs choice of forum should prevail.' It follows that 'transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.'") (internal citations omitted).
[26] Doc. 8-2, ¶3.
[27] *Gordon v. United States*, 344 U.S. 414, 421, 73 S. Ct. 369, 374, 97 L. Ed. 447 (1953).
[28] *See, e.g. Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 222 (3d Cir. 2009) (upholding trial court's exclusion of testimony regarding the contents of contracts where the appellant failed to produce the contracts at trial).

at issue.[29] The PPA forum selection clause expressly applies to "any dispute *regarding this Agreement*."[30] Keller's copyright infringement claims concern (1) MHE's entirely unlicensed use of Keller's Photographs, and (2) MHE's use beyond the terms of Licenses issued by The Stock Market and Corbis. The PPAs deal with pricing of licenses issued by MHE from 2003 onward. This lawsuit is not a dispute "regarding" the price of a license, and so does not fall within the purview of the PPAs.

In *Wild v. Jungle Media Group*, the court was presented with a similar issue – whether to apply a forum selection clause to claims that were not contractual in nature.[31] Judge Yohn declined to find that the forum selection clause – which applied to claims "arising under this Agreement," – required that the non-contractual claims be brought in the specified forum.[32] *Wild* distinguished two cases cited by the defendant there – *Crescent Int'l, Inc. v. Avatar Communities, Inc. et al.*,[33] and *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd*[34] – because those cases involved both tort *and* contract claims.[35]

Here, as in *Wild*, Keller's claims sound in copyright, not contract. *Lefkowitz v. McGraw-Hill Cos.*,[36] *Lefkowitz v. John Wiley & Sons, Inc.*[37], and *Jon Feingersh Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,[38] cited by MHE, are distinguishable on this point as well – each of those cases also involved claims for breach of contract.

---

[29] *Wyeth & Bro. Ltd. v. Cigna Int'l. Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997); *see also Wild v. Jungle Media Grp.*, No. CIV.A. 02-5123, 2004 WL 834695, at *7 (E.D. Pa. Mar. 17, 2004) ("the forum selection clause applies to this dispute only if plaintiff's claims 'arise under' the agreements.").
[30] Docs. 8-5, 8-6, and 8-7 (emphasis added).
[31] No. CIV.A. 02-5123, 2004 WL 834695, at *1 (E.D. Pa. Mar. 17, 2004) (Yohn, J.).
[32] *Id*.
[33] 857 F.2d 943, 944 (3d Cir.1988).
[34] 709 F.2d 190, 203 (3d Cir.1983).
[35] *Wild*, 2004 WL 834695, at *8.
[36] No. 13-1661, 2013 WL 3061549, at *4 (E.D. Pa. June 19, 2013) (Schiller, J.).
[37] No. 13-1662, 2013 WL 4079923, at *2 (E.D. Pa. Aug. 13, 2013) (Baylson, J.).
[38] No. 13-2378, 2014 WL 716723, at *3-4 (E.D. Pa. Feb. 25, 2014) (Slomsky, J.).

The Third Circuit has discussed the distinction between "arising under" and "in relation to" in forum selection clauses, explaining that "arising under" is narrower than "in relation to."[39] The language at issue in this case – "regarding this Agreement" – is closer to "arising under" than it is to "in relation to," and therefore should be construed narrowly.

The Southern District of New York and the Second Circuit have also carefully examined the forum selection clauses in Corbis agreements and found their language is to be construed narrowly.[40] In *Light v. Taylor*, the Southern District of New York held that "such language is narrow in focus and does not encompass independent copyright claims."[41] The *Light* court gave the following analysis:

> Light's claims in this action do not arise out of the Corbis User Agreement. The Corbis User Agreement is merely a site usage agreement, and the Complaint does not allege that Taylor violated it, much less seek damages for any violation. Rather, the Complaint alleges that Taylor violated United States copyright law. Accordingly, Light's copyright claim in this action cannot be said to arise under the Corbis User Agreement. *See Corcovado Music Corp. v. Hollis Music, Inc.* 981 F.2d 679, 682 (2d Cir. 1993) (refusing to enforce a forum selection clause on the ground that the plaintiff had sued for copyright infringement and had not alleged breach of contract); *Cheever v. Acad. Chicago, Ltd.*, 690 F.Supp 281 (S.D.N.Y. 1988) (refusing to enforce a forum selection clause where the rights asserted arose from copyright law and not from the contract); *Dan-dee* [*Int'l, Ltd. v. Kmart Corp.* 2000 WL 1346865 at *5 (S.D.N.Y. Sept. 19, 2000) (holding that a forum selection clause did not encompass a copyright action where the plaintiff sought monetary and injunctive relief under federal statutes, as opposed to damages for breach of contract).
>
> Because Light's claims do not arise under the Corbis User Agreement, this Court need not determine whether Light was a third-party beneficiary of that Agreement.[42]

On appeal, the Second Circuit affirmed the ruling, explaining:

> Light failed to demonstrate that Taylor consented to New York jurisdiction by entering a user agreement with Corbis. Forum selection clauses are enforced only

---

[39] *Wyeth*, 119 F.3d at 1075.
[40] *Light v. Taylor*, 2007 WL 274798, at *6 (S.D.N.Y. Jan. 29, 2007), *aff'd,* 317 F. App'x 82 (2d Cir. 2009).
[41] *Id.*
[42] *Id.*

when they encompass the claim at issue.  *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir.1993).  The relevant clause here applies only to disputes "regarding" the agreement.  *Light's copyright claims are not governed by the forum selection clause because they do not encompass a dispute with respect to the Corbis agreement.*[43]

Here, as in *Light*, the copyright infringement dispute between Keller and MHE does not require or rely on interpretation of the Corbis agreement in which the forum selection clause appears.  The holding in *Atlantic Marine* is based on the premise that, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."[44]  The PPAs address the price Corbis would charge MHE for licenses it requested from Corbis from 2003 onward.  Once MHE used the images in excess of the license terms, MHE made itself a "stranger" to the licensor, Corbis.[45]  The PPAs neither govern nor address unauthorized use.  Corbis's agreement to litigate disputes regarding its pricing with MHE in New York cannot be fairly considered an agreement by Keller to litigate copyright claims against MHE in that forum.

Contrary to MHE's argument, Keller's representation agreements with Corbis and TSM are also no basis for compelling transfer to New York.[46]  This is not a dispute between Keller and his stock agencies.  The language of the forum selection clause in the representation agreements does not encompass Keller's copyright infringement claims against MHE.[47]

---

[43] *Light v. Taylor*, 317 F. App'x 82, 83-84 (2d Cir. 2009) (emphasis added).
[44] *Atl. Marine Const. Co.,* 134 S. Ct. at 583.
[45] *See Marshall v. New Kids On The Block Partnership,* 780 F.Supp. 1005, 1008 (S.D.N.Y. 1991) (holding that "a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license"); *see also Kanakos v. MX Trading Corp.,* 1981 WL 1377 at *2 (S.D.N.Y. 1981) ("Where a licensee utilizes a copyrighted work in a manner or to an extent not authorized by the license agreement, the licensee's position is no different from that of an infringer having no contractual relationship with the holder of the copyright.  In both cases, the resulting cause of action is one for copyright infringement, and the claims against both arise under the copyright statutes").
[46] Doc. 8-1 at 4.
[47] Keller's agreements with TSM include the following provision: "This agreement and all matters collateral thereto shall be construed according to the laws of the State of New York, and any controversy *arising hereunder* shall be litigated solely in a court of competent jurisdiction of such state." (Doc. 1-2 at p. 8) (emphasis added).  Keller's agreement with Corbis states, "In any action arising out of this Agreement, you consent to personal jurisdiction and

### A. Applying the *Jumara* balancing test, the claims should stay in the Eastern District of Pennsylvania.

Since the *Atlantic Marine* "adjustments" to the transfer analysis do not apply, for reasons discussed in the previous section, MHE has the burden of showing that "the convenience of the parties and witness" and the "interest of justice" weigh in favor of transfer.[48]

#### 1. The private factors in this case weigh against transferring the case.

Incorrectly assuming that *Atlantic Marine* applies to this case, MHE focuses much of its argument on why private factors should not be considered. In the alternative, it alleges that the case should be transferred to New York because it claims, "Corbis invoicing at issue in this case was issued from those companies' offices in New York, and the witnesses with Corbis who have knowledge of McGraw-Hill's dealings and agreements with Corbis are also all based or reside in New York."[49] MHE has failed, however, to submit the Licenses to prove that they were issued to or from NY-based employees, and it has failed to show that witnesses with relevant information would not be able to appear in this forum. The private factors, when considered, weigh against transfer.

##### a) Plaintiff's choice of forum should be preserved.

Keller is a resident of Pennsylvania and has chosen to bring suit here. A plaintiff's choice of venue "should not be lightly disturbed."[50]

##### b) MHE has not shown that the convenience of witnesses favors transfer.

---

the exclusive venue of the state and federal courts sitting in New York City, New York. " (Doc. 1-3 at p. 7).
[48] 28 U.S.C. § 1404(a).
[49] Doc. 8-1 at 7.
[50] *Nemo Associates, Inc. v. Homeowners Mktg. Servs. Int'l, Inc.*, 942 F. Supp. 1025, 1028 (E.D. Pa. 1996); *Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 362 (D. Del. 1994).

The convenience of parties and witnesses weighs against transferring this case. In a 1994 decision, the district of Delaware noted,

> [I]n regard to the convenience of both parties and witnesses, this district has acknowledged that these factors are somewhat antiquated. Technological changes have made an already high burden on the moving party, to show that the factors strongly favor transfer, even higher.[51]

To the extent the convenience of witnesses is considered, it is only relevant to the extent that the witnesses may be unavailable for trial.[52] And, the movant must do more than merely assert that there are witnesses outside the forum; it must show both that the witnesses are unavailable, and are "necessary to the litigation."[53] Though MHE contends that there are witnesses with knowledge in New York, it stops short of claiming that any of these unidentified witnesses would be unable or unwilling to take the train to Philadelphia.[54]

MHE mentions one former Corbis employee by name, Steve Spellman, whom MHE contends has information regarding the pricing agreements between Corbis and MHE.[55] As discussed above, however, the relevant documents here are the Licenses, not the PPAs. Again, MHE has failed to submit the Licenses in suit, but those Plaintiff's counsel has access to were

---

[51] *Tuff Torq Corp.*, 882 F. Supp. at 363.

[52] *DermaMed, Inc. v. Spa de Soleil, Inc.*, 152 F. Supp. 2d 780, 784 (E.D. Pa. 2001)(citing *Omnikem, Inc. v. Shepherd Tissue, Inc.*, 2000 WL 486610 at *5, 2000 U.S.Dist. LEXIS 5268 at *17 (E.D. Pa. Apr. 26, 2000)); *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 445 (E.D. Pa. 1999) (identifying private interests for consideration as including "the convenience of witnesses, only to the extent that a witness may be unavailable for trial in one of the fora").

[53] *Pennsylvania Mach. Works, Inc. v. N. Coast Remanufacturing Corp.*, No. CIV.A. 04-1731, 2004 WL 2600117, at *6 (E.D. Pa. Nov. 16, 2004) ("North Coast argues that the "convenience of witnesses" requires the court to transfer the case to Ohio. It lists several former employees who reside in Ohio and are thus beyond compulsory process. It further speculates that these witnesses will not agree to travel to Pennsylvania to testify, and that even if they agreed, the cost would be 'extremely burdensome.' These bare allegations do not prove that litigating the case in Pennsylvania will cause these witnesses substantial inconvenience. North Coast fails to explain why these non-parties are necessary to the litigation.") (internal citations omitted).

[54] *See Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d at 447 (E.D. Pa. 1999) (noting that the defendant failed to meet its burden "of identifying which particular witnesses will benefit from transfer, which it can do by naming witnesses, showing the nature and the materiality of their testimony, and indicating the hardships they would suffer having to testify in this district.").

[55] Beall Decl., ¶3 (Doc. 8-2).

issued by Corbis agents in Chicago, Illinois and Washington – where Corbis was located – to MHE employees in Peoria, Illinois, Woodland Hills, CA.[56]

MHE does not identify the location of its own representatives with knowledge of material facts. This is because the answer weighs against it. In a similar copyright infringement suit – *McGraw-Hill School Education Holdings, LLC, et al. v. Minden Pictures, Inc.*[57] – MHE *opposed* a stock-photography agency's attempt to depose MHE representatives in New York. In *Minden*, Christopher Beall, one of MHE's attorneys in this case, wrote a letter to Judge Daniels of the Southern District of New York, explaining why New York was inconvenient for MHE's representatives:

> "New York is *not* the principal place of business for the corporate witnesses who will testify on behalf of McGraw-Hill. [¶] While McGraw-Hill's corporate headquarters are in New York, MHSE's [McGraw-Hill School Education Holdings, LLC's] principal place of business and its center of operations … is in Columbus [, Ohio]. And, MHHE's [McGraw-Hill Global Education Holdings, LLC's] principal place of business and its center of operations is in Dubuque [, Iowa]. Accordingly, the corporate witnesses for MHSE reside and work in Columbus, and the witnesses for MHHE reside and work in Dubuque."[58]

Mr. Beall's letter further asserted that bringing MHE's witnesses to New York "would cause undue hardship" and would be "inconvenient" for MHE representatives. To emphasize the point, Mr. Beall listed 21 depositions of MHE witnesses taken in similar cases in cities other than New York, including Chicago, Columbus, Dubuque, and Burr Ridge, Illinois.[59] Because MHE has previously alleged that New York would be inconvenient for *its own* witnesses, and because it has shown no reason why any witnesses with relevant information would be unavailable for trial in the Eastern District of Pennsylvania, this factor weighs against transfer.

---

[56] *See* Bruss Decl., Ex. D.
[57] S.D.N.Y. Case No. 1:15-cv-02243-GBD.
[58] *See* Bruss Decl., Ex. F at p. 4 (emphasis in original).
[59] *Id.*, pp. 2-3. Additionally, for two of the three Pricing Agreements that MHE relies upon, MHE's signatory – Alex Mlawsky – is listed as having an address in Columbus, Ohio. *See* Docs. 8-1 and 8-2.

### c) The location of documents and records weighs against transfer.

Much like MHE's key representatives, many of the pertinent records are not in New York, they are in Ohio and Iowa. MHE archives its publications in three ways: a collection of CDs or DVDs, a shared server, and hard copies.[60] Approximately two-thirds of MHE's school group titles are on CDs or DVDs, which are located in MHE's facility in Columbus, Ohio.[61] Hard copies of MHE's books are stored in Ohio warehouses.[62] Records of MHE's photo retention and content licensing—including photographs MHE received from photographers – are located in Dubuque, Iowa.[63] Since many of the pertinent records are in Ohio and Iowa, and MHE failed to show it would be more convenient to produce them in New York, there is no justification for denying Keller's selected forum.

### d) The relative financial condition of the parties weighs against transfer.

Keller is an individual photographer, while MHE is a large, international textbook publishing company with $1,290,478,000 in revenue for the fiscal year ending December 31, 2014.[64] Given the vast disparity of resources, the burden *created* by transferring the case to the Southern District of New York – situs of MHE's counsel – is much greater on Keller.[65] Accordingly, it weighs against transfer.

### 2. The public factors in the *Jumara* test also weigh against transfer.

In addition to the private factors noted above that weigh against transferring the case, a number of public factors – court congestion and this district's interest in the case – similarly favor keeping the case in this district. Relative administrative difficulty resulting from court

---

[60] *See* Transcript of Deposition of Rachel Norton, Bruss Decl. Ex. G, at 6:15-7:04.
[61] Bruss Decl. Ex. H, Transcript of Deposition of Robert C. Anania, at 09:18-10:07; 26:12-27:02.
[62] *Id*. *See also* Bruss Decl. Ex. G, Transcript of Deposition of Rachel Norton at 6:20-7:04.
[63] *See* Bruss Decl. Ex. I, Transcript of Deposition of Kara Kudronowicz, at pp. 36:06-37:09.
[64] *See* Bruss Decl. Ex. J, McGraw-Hill Global Education Intermediate Holdings, LLC's Form 10-K, at p. 30.
[65] Transfer of this case would require Keller's counsel to travel to New York for hearings and conferences. Maurice Harmon lives and works in Pennsylvania; Amanda Bruss lives and works in Colorado. *See* Bruss Decl., ¶2.

congestion is one of the *Jumara* public interest factors.[66] Cases tend to move faster here than in New York: the Eastern District of Pennsylvania's filing-to-disposition (5.2 months) is shorter than the Southern District of New York's (8.3 months).[67] For cases that go to trial, the difference is even greater – 19.8 months in the Eastern District of Pennsylvania compared to 25.3 months in the Southern District of New York.[68] Not only is the Eastern District of Pennsylvania the naturally faster route for this case, but transferring it to the Southern District of New York would add even more time to the process. This factor weighs in favor of keeping the case in the Eastern District of Pennsylvania.

Additionally, the interest in adjudicating local controversies at home weighs against transfer. MHE is a global textbook publisher, distributing books all over the country and the world. Everywhere that MHE sold infringing products, it profited from the unauthorized use of Keller's images. Keller is a resident of Pennsylvania. MHE has offered no reason why the Southern District of New York has more of an interest in widespread copyright infringement than the Eastern District of Pennsylvania.

## CONCLUSION

The forum selection clauses in PPAs between Corbis and MHE do not compel transfer to the Southern District of New York, and MHE has failed to submit evidence demonstrating that the Licenses issued by TSM and Corbis require litigation of infringement claims in that forum. MHE has also failed to show that the private and public factors in the *Jumara* balancing test weigh in favor of transferring this case. Keller chose to file suit in the Eastern District of Pennsylvania, a district in which MHE has profited from the sale of textbooks containing

---

[66] *Jumara,* 55 F.3d at 878-879.
[67] *Id.*
[68] *Id.*

infringed Keller's photographs.  Venue is appropriate here, and MHE has failed to present evidence that clearly favors transfer.  Therefore, MHE's motion should be denied in its entirety.

DATED:  June 6, 2016

             Plaintiff Michael Keller, by his attorneys,

             *s/ Amanda L. Bruss*
             Amanda Bruss (*admitted pro hac vice*)
             Harmon & Seidman LLC
             12354 East Bates Circle
             Aurora, CO 80014
             Tel:  415-271-5754
             E-mail:  amanda@harmonseidman.com

             Maurice Harmon, PA Bar No. 304872
             Harmon & Seidman LLC
             11 Chestnut Street
             New Hope, PA 18938
             Tel: (917) 516-4434
             E-mail:  maurice@harmonseidman.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2016, I caused the foregoing pleading to be filed by ECF with the Clerk of Court, who will notify all attorneys of record.

             *s/ Amanda L. Bruss*
             Amanda L. Bruss